EXHIBIT 1



**SERVICES AGREEMENT**

THIS SERVICES AGREEMENT ("Agreement") is made this 7th day of July, 2022, by and between AEROTEK, INC., a Maryland corporation, ("AEROTEK"), and Fosler Construction Company, Inc. ("Client").

**BACKGROUND**

AEROTEK is engaged in the supplemental staffing services business providing contract personnel to customers with staffing needs.  Client desires to engage AEROTEK to provide supplemental staffing services and AEROTEK desires to be engaged by Client, all on the terms and conditions of this Agreement.

NOW, THEREFORE, in consideration of the promises and mutual promises contained herein, the parties agree as follows:

**1.     TERM:** This Agreement shall commence on the date this Agreement is executed by all parties, and continue for an initial term of one (1) year, and shall continue thereafter on a month-to-month basis, unless earlier terminated as provided herein. This Agreement may be terminated by either party upon thirty (30) days prior written notice.

**2.     CONTRACT EMPLOYEES**
**2.1.     CONTRACT EMPLOYEES DEFINED**:  As used throughout this Agreement, the term "Contract Employee" means an AEROTEK employee temporarily placed with the Client pursuant to this Agreement.

**2.2.     SERVICES:** AEROTEK shall provide to Client one or more Contract Employees as requested by Client from time to time. Such Contract Employees shall provide services under Client's management and supervision at a facility or in an environment controlled by Client.  Attached hereto as _Exhibit A_, is a list of the names of the Contract Employee(s) to be placed initially with Client, standard and overtime hourly billing rates for each Contract Employee, and the starting date for each Contract Employee. Unless otherwise agreed by the parties, this Agreement shall apply to additional Contract Employees provided by AEROTEK as requested by Client hereunder from time to time. Should Client request additional services subsequent to the execution of this Agreement, and such services are not listed on _Exhibit A_ attached hereto, or should either Client or AEROTEK request changes to hourly billing rates or other terms for any Contract Employee working under the terms of this Agreement, any such additions or changes will be mutually agreed to in writing by both parties. Such agreed upon terms shall become a part of this Agreement, as amended.

**2.3.     DUTIES:**  It shall be the Client's responsibility to control, manage and supervise the work of the Contract Employees assigned to Client pursuant to this Agreement.  Client agrees to provide site specific training to Contract Employees. The Contract Employees shall perform only the duties and functions of the specific jobs set forth opposite the Contract Employee's name on _Exhibit A_ or on the job description attached to this Agreement.  In no event shall any Contract Employee be assigned or permitted to perform any other duties or functions other than those specified in _Exhibit A_ for Client without the express written consent of AEROTEK.  Should Client assign the Contract Employee to perform the duties or functions of a position not listed in _Exhibit A_ or within the job description attached hereto, AEROTEK may, in its sole and absolute discretion, deem this Agreement breached by Client  and take whatever action it deems necessary or appropriate.

**2.4.     CASH HANDLING:** Client agrees that it will not permit any Contract Employee to (i) handle cash, negotiable instruments or other valuables without AEROTEK's written consent (and then only under Client's direct supervision), or (ii) transport or convey money, securities or negotiable instruments for Client (including, but not limited to, delivering bank deposits to a bank or other institution).

**2.5.     MOTOR VEHICLES:** Contract Employee(s) are not authorized to operate a motor vehicle without AEROTEK's prior written permission.  Client shall not request or require Contract Employee(s) to perform tasks which require driving a motor vehicle without AEROTEK expressed written permission.

**2.6.     INTERNATIONAL TRAVEL:** Contract Employee(s) are not authorized to travel internationally without AEROTEK's prior written permission. Client shall not request or require Contract Employee(s) to perform tasks which require international travel without AEROTEK's prior written permission.

**3.     INDEPENDENT CONTRACTOR STATUS:**  With respect to the services provided by AEROTEK, AEROTEK shall be an independent contractor. AEROTEK shall provide any salary or other benefits to such Contract Employees; will make all appropriate tax, social security, Medicare and other withholding deductions and payments; will provide worker's compensation insurance coverage for its Contract Employees; and will make all appropriate unemployment tax payments.

**4.     TIME RECORDS AND INVOICES:** Exaktime shall be the official time record for purposes of payment herein. AEROTEK shall submit weekly invoices to Client for services rendered by Contract Employee(s) for the number of hours worked by Contract Employee(s) billed at the rates listed on _Exhibit A_, in addition to all applicable sales and other tax, or as otherwise agreed by both parties. Hours shall be billed at the overtime rate when a Contract Employee works in excess of forty (40) hour per week, or is otherwise entitled by law to overtime compensation.  The number of hours billed by AEROTEK shall be supported by a signed executive summary for the week or other time record approved by a representative of the Client. Aerotek will be privuded a preliminary executive summary prior to submitting such summary via invoice to Client.  Client is solely responsible for ensuring that information submitted to AEROTEK regarding hours worked by Contract Employee(s) is timely and accurate.  In the event Client or Client's Representative fails to timely or accurately affirm the hours worked by Contract Employees or provide adequate systems or reporting to account for all hours, Client shall be liable to AEROTEK for  all hours worked by the Contract Employees.  Invoices submitted by AEROTEK to Client are presumed to be accurate and fully payable on the terms contained therein unless disputed by Client within ten (10) business days of Client's receipt of the invoice.

**5.     PAYMENT DEFAULT:**  Payment in full for invoices <u>via check or EFT</u> shall be due within thirty (30) days from invoice date, at AEROTEK, 3689 Collection Ctr. Dr., Chicago, Illinois 60693. Invoices that are more than seven (7) days past due are subject to a late charge of one percent (1%) per month on the amount of the past due balance. Late charges shall be calculated using the U.S. Method, therefore interest will not be compounded on the past due balance. If the Client's account is past due or Client has exceeded AEROTEK's established credit limit, AEROTEK shall notify Client in writing of such occurrence.  Upon such notice, and upon giving the Client thirty (30) days to remedy such matters, AEROTEK may,  with additional notice, cease providing any and all further Contract Employee services without any liability to Client for interruption or stoppage of pending work.  In addition, the parties agree that in the ordinary course of business AEROTEK may, in its sole discretion, apply payments made by Client to any outstanding Client invoice, notwithstanding any direction by Client regarding application of the payment.

Payments shall not become due to Aerotek on a properly submitted invoice unless and until Client receives for each Contract Employee assigned to Client, an up-to-date, completed, and accurate Ohio domicile declaration form and associated evidence of Ohio domicile



and all Weekly Residency Reports for the invoice period showing compliance with the Ohio FTE Requirement. Such receipt of documentation by Aerotek is intended as a condition precedent to Clients obligations to pay Aerotek and Aerotek accepts the risks associated with such contingency.

**6.   EXPENSES:**  Client shall reimburse AEROTEK for all ordinary, necessary, and reasonable travel expenses incurred by Contract Employee(s) while performing services on behalf of Client that require Contract Employee to travel away from Client's primary job site provided such expenses are approved by Client prior to incurring.  Client agrees to accept legible copies of receipts (or electronic copies, if billed electronically) as the supporting documentation needed to pay the expense amount on the invoice.

**7.   COLLECTION:**  If the Client's account, after default, and Client fails to remedy such default within thirty (30) days written notice of such event,   AEROTEK may institute proceedings to seek a default judgment in any court of competent jurisdiction in the United States.

**8.   BANKRUPTCY:** Client agrees that in the event Client files bankruptcy, (i) to the extent AEROTEK pays the salary and other direct labor costs of the Contract Employees it provides to Client and such amounts incurred within one hundred and eighty (180) days prior to bankruptcy are not paid by Client to AEROTEK prior to bankruptcy, and/or (ii) AEROTEK is the assignee of claims held by such Contract Employees against Client for such amounts incurred within one hundred and eighty (180) days prior to bankruptcy and such amounts are not paid by Client to AEROTEK prior to bankruptcy, then AEROTEK has a claim against Client in bankruptcy for the amount of such salary and other direct labor costs which is entitled to a priority under 11 U.S.C. § 507(a)(4).

**9.   PURCHASE ORDERS:** Payment of AEROTEK invoices shall not be dependent upon a Client generated purchase order. If a purchase order is required pursuant to this Section, Client shall deliver to AEROTEK a written purchase order before the Contract Employee's start date with Client.  As stated in Section 15.21 herein, this Agreement and *Exhibits* constitute the entire agreement between the parties.  If there is any inconsistency or conflicting terms between this Agreement and a Client purchase order, this Agreement shall prevail.  If a purchase order is required pursuant to this paragraph, failure by Client to deliver said purchase order shall not release Client of its obligations contained in this Agreement.

**10.   EXPORT CONTROL:** Client agrees that it will adhere to all applicable export controls including but not limited to the International Traffic and Arms Regulations (ITAR), the Export Administration Regulations (EAR), and all regulations and orders administered by the Office of Foreign Asset Control of the U.S. Department of Treasury. Client further assumes responsibility for Contract Employees' actions with regard to any transfer of export controlled articles to include technical data, and defense services while acting within the scope of work under this contract, to include the procurement of any licenses required under the ITAR or EAR. Client is responsible for promptly identifying in writing for AEROTEK positions that require access to export controlled data or require AEROTEK provided personnel to participate in the export of controlled information and technologies to foreign persons.  Upon notification of applicable export controls, AEROTEK will certify that Contract Employees placed in those positions are U.S. persons.

**11.   RESTRICTIVE COVENANT**
**11.1.   RESTRICTIVE COVENANT - CONVERSION:** AEROTEK is not an employment agency. Its services are provided at great expense to AEROTEK. In consideration thereof, during the term of this Agreement and for the twelve (12) month period immediately following the period for which a Contract Employee last performed services for the Client under this Agreement, Client shall not, directly or indirectly, for itself, or on behalf of any other person, firm, corporation or other entity, whether as principal, agent, employee, stockholder, partner, member, officer, director, sole proprietor, or otherwise, solicit, participate in or promote the solicitation of such Contract Employee to leave the employ of AEROTEK, or hire or engage such Contract Employee.  However Client will not be deemed to have breached this Section  by hiring Contract Employees  who have (a) responded to generally placed help-wanted advertisements or job postings, (b) otherwise approached the Client  on their own initiative, or (c) been terminated or notified of pending termination by Aerotek. If any Contract Employee provided by AEROTEK to Client is engaged by Client to perform services, either directly or indirectly, if such Contract Employee is hired prior to completion 2500 manhours work   with the Client through AEROTEK, the Client will pay AEROTEK, as liquidated damages, an amount equal to 30% from 0 to 830 manhours, 20% 831 to 1660 and 10% 1661 to 2500 manhours of the Contract Employee's first year salary, including bonuses, with Client.

**11.2.   RESTRICTIVE COVENANT – RIGHT TO HIRE:** Notwithstanding, the above Section 11.1*,* if Contract Employee has completed the minimum assignment duration at Client for AEROTEK ("Temp to Hire Duration"), pursuant to *Exhibit A*, there will be no fee for directly hiring the Contract Employee.

**11.3.   ACCOUNT STATUS:** Notwithstanding the above Section 11.2,  if Client exercises its right to hire a Contract Employee at a time when Client is in breach of Section 5 of this Agreement or Client's account is otherwise not current or in good standing, Client agrees to pay the fee outlined in Section 11.1, even though the Contract Employee has completed the Temp to Hire Duration outlined in the *Exhibit A*.

**12.   SUBMITTALS**
**12.1. RIGHT TO HIRE:**    Resumes submitted to Client are confidential and for Client use only.  Client agrees that AEROTEK is the exclusive representative of all candidates for which resumes are submitted to Client by AEROTEK in response to Client requests.  Accordingly, Client agrees that if any candidate submitted to Client by AEROTEK is engaged to perform services, either directly or indirectly, by Client within twelve (12) months of receipt of the resume, Client agrees to pay to AEROTEK, as liquidated damages an amount equal to 30% of the employee's first year annual salary, including bonuses.

**12.2.   CONTRACT EMPLOYEE PERFORMANCE:** Within the initial employment guarantee period as detailed in the attached *Exhibit A* from any Contract Employee(s) starting date, Client shall review the Contract Employee's performance and decide whether to continue the engagement of such Contract Employee. If Client is dissatisfied with the performance of the Contract Employee, and Client wishes AEROTEK to terminate its engagement of such Contract Employee, Client must notify AEROTEK within the initial period, specifying the reasons for its dissatisfaction, and Client shall not be required to pay for the hours worked by that Contract Employee during the initial period, provided its reasons for termination are not unlawful and are bona fide in AEROTEK reasonable judgment. If Client becomes dissatisfied with the performance of a Contract Employee after the initial period, Client may request that AEROTEK terminate the engagement of that Contract Employee upon written notice to AEROTEK, but Client shall pay for all hours worked by the terminated Contract Employee from the first hour of work up to and including the date of termination.

**12.3.   LIMITATION OF LIABILITY:** AEROTEK does not warrant or guarantee that the Contract Employee(s) placed pursuant to this Agreement will produce any particular result or any solution to Client's particular needs, or perform services in any particular manner. Accordingly, Client acknowledges and agrees that AEROTEK is not responsible for any aspects of the Contract Employees work or the Client's project, including, any deadlines or work product.  Because

Case 1:24-cv-00177-JRR   Document 1-2   Filed 01/18/24   Page 4 of 7



AEROTEK is providing supplemental staffing services only, and Client is directing and supervising the Contract Employees who render these services, AEROTEK and Client shall not be liable (i) for any claims, costs, expenses, damages, obligations or losses arising from or in connection with the acts or omission of any Contract Employee, including, work on engineering or design concepts or calculations or related drawings, software programs, designs or documentation, or (ii) for any indirect, special or consequential damages (including, but not limited to, loss of profits, interest, earnings or use) whether arising in contract, tort or otherwise.

12.4 Aerotek agrees to indemnify, defend, and hold harmless Client and its officers, directors, and employees (hereinafter referred to as "Indemnitees") from and against any and all losses, liabilities, claims, suits, damages, causes of action, and/or expenses (including attorney fees, court costs, and other expenses of litigation) which may arise out of, result from, or be incidental to Aerotek's duties, aobligations or the performance of the Services under this Agreement. Client agrees to indemnify, defend, and hold harmless Aerotek and its Indemnitees from and against any and all losses, liabilities, claims, suits, damages, causes of action, and/or expenses (including attorney fees, court costs, and other expenses of litigation) arising out or related to Client's negtligence, willful misconduct, acts or omissions in the performance of any duty, obligation, or responsibility under this Agreement.

## 13. CLIENT PROPERTY

**13.1. WORK PRODUCT:** All work product of every kind performed by any Contract Employee on behalf of Client shall be the sole and exclusive property of Client.

**13.2. DAMAGES:** AEROTEK does not provide insurance coverage for any real or personal property of Client, including but not limited to machinery, equipment, computers, tools, vehicles or other real or personal property which is owned or leased by Client. Accordingly, Client agrees that in the event it supplies, provides or otherwise allows Contract Employees to use or have access to any property of Client, (including but not limited to cell phones, laptop computers, tools, etc.), Client shall be solely responsible for any damage, theft, repair or loss associated with this property..

**13.3. CONFIDENTIALITY:** AEROTEK recognizes that while performing its duties under this Agreement, AEROTEK and its Contract Employees may be granted access to certain proprietary and confidential information regarding Client's business, customers, and employees. AEROTEK agrees to keep such information confidential and the obligations of this paragraph will survive the termination of this Agreement. This paragraph does not apply to information that was previously known or information that is available in the public domain.

13.4 **INSURANCE**: Aerotek shall procure, and, so long as this Agreement and any schedule is in force, maintain Workers' Compensation Insurance, Employer Liability Insurance, and Commercial General Liability Insurance, all with contractual coverage, with respect to all services and activities done under this Agreement or any schedule which may later be issued. All such insurance shall be in such form and with such carriers as reasonably acceptable to Client. Prior to the provision of Contract Employee pursuant to this Agreement or any schedule, the Company shall provide a certificate of such insurance, including contractual coverage. Each policy shall provide that Client shall receive not less than thirty (30) days' notice prior to any amendment, expiration, or cancellation of any policy required hereunder and the certificate shall be so noted.

## 14. NOTICES

**14.1. MANNER:** Any notice or other communication ("Notice") required or permitted under this Agreement shall be in writing and either delivered personally or sent by email, overnight delivery, express mail, or certified or registered mail, postage prepaid, return receipt requested.

**14.2. ADDRESSEE:** A Notice shall be addressed, in the case of AEROTEK, to Contracts Department at: 7301 Parkway Dr. Hanover, MD 21076 or, in the case of Client, to          , at          . If sent by email, a Notice shall be sent to AEROTEK at AerotekContractNotices@Aerotek.com or to Client at          .

**14.3. DELIVERY:** A Notice delivered personally shall be deemed given only if acknowledged in writing by the person to whom it is given. A Notice sent by email shall be deemed given when receipt of such Notice is given, or where no read receipt is requested by the sender, at the time of sending, provided that no delivery failure notification is received by the sender within forty-eight (48) hours of sending such Notice. A Notice sent by overnight delivery or express mail shall be deemed given twenty-four (24) hours after having been sent. A Notice that is sent by certified mail or registered mail shall be deemed given forty-eight (48) hours after it is mailed. If any time period in this Agreement commences upon the delivery of Notice to any one or more parties, the time period shall commence only when all of the required Notices have been deemed given.

**14.4. CHANGES:** Either party may designate, by Notice to the other, substitute addressees or addresses for Notices, and thereafter, Notices are to be directed to those substitute addresses.

## 15. MISCELLANEOUS

**15.1. WAIVER:** Failure to insist upon strict compliance with any of the terms, covenants or conditions of this Agreement shall not be deemed a waiver of that term, covenant or condition or of any other term, covenant or condition of this Agreement. Any waiver or relinquishment of any right or power hereunder at any one or more times shall not be deemed a waiver or relinquishment of that right or power at any other time.

**15.2. REMEDIES CUMULATIVE:** The remedies set forth in this Agreement are cumulative and are in addition to any other remedies allowed at law or in equity. Resort to one form of remedy shall not constitute a waiver of alternate remedies.

**15.3. Dispute Resolution :** All disputes, controversies or differences arising in connection with the validity, execution, performance, breach, non-renewal or termination of this Agreement shall be will be instituted only in the federal courts of the United States of America or the courts of the State of Ohio , and each Party irrevocably submits to the exclusive jurisdiction of such courts in any such suit, action or proceeding.

**15.4. DRUG & BACKGROUND SCREENING:** If Client requires AEROTEK to perform certain drug and/or background screenings on its candidate(s) and/or Contract Employee(s), the appropriate *Exhibit B(s)* should be completed by Client and signed by both Client and Aerotek. These screenings will be performed at Client's sole expense unless otherwise agreed to in writing by both parties.

**15.5. ASSIGNMENT:** No party shall transfer or assign any or all of its rights or interests under this Agreement or delegate any of its obligations without the prior written consent of the other party.

**15.6. COMPLIANCE:** Client agrees that it will comply with applicable federal, state, and local laws in connection with the services provided by AEROTEK hereunder, including but not limited to the following:

**15.7. EQUAL OPPORTUNITY:** AEROTEK is an equal opportunity employer and refers Contract Employees regardless of race, sex, color, religion, creed, ancestry, national origin, disability, age, marital status or other protected class status pursuant to applicable law. Client agrees and warrants that it will not reject Contract Employees, or otherwise deem Contract Employees unacceptable, or take any other action for any reason prohibited by

AEROTEK, INC.  2/10/2022              7301 Parkway Drive   Hanover, MD  21076              Page 3 of 6



federal, state or local laws including, but not limited to, laws pertaining to employment discrimination or employee safety. Client will indemnify, defend and hold AEROTEK harmless with respect to any and all claims that Client took action in violation of federal, state, and/or local laws, including costs of suit, settlement and attorneys' fees.

**15.8. GOVERNMENT CONTRACTING – NOTIFICATION AND WAGE DETERMINATION:** Client represents and warrants that the services to be provided by Contract Employees are not (i) supporting a contract for the United States, State or Local Government; or (ii) subject to any federal, state, or local prevailing wage determination, including but not limited to, the Service Contract Act of 1965, Davis-Bacon Act, or Walsh-Healey Public Contract Act. Client acknowledges and agrees that Client is responsible for (i) prior notification to AEROTEK of any and all projects that support a contract with the United States, State or Local Government, and (ii) the accuracy of any applicable prevailing wage determinations and flow down provisions. If it is later determined that such services provide by Contract Employees were in support of a United States, State or Local Government contract, Client agrees to indemnify AEROTEK for any claims, costs or fees which (i) AEROTEK may incur from any misclassification related to such determination; and (ii) result from any inaccuracy of the Client provided wage determination including, but not limited to, the failure to notify AEROTEK that the services provided by Contract Employees are or were required to be paid at a prevailing wage. Should Client fail to notify AEROTEK of an applicable prevailing wage or provide accurate wage determinations, AEROTEK reserves the right to bill Client the difference in the rate for all hours worked plus any statutory or regulatory costs associated with such rate difference. -

**15.9. AVIATION REGULATIONS:** Client represents that none of the services to be performed by any Contract Employee will be FAA-regulated as a "SAFETY-SENSITIVE FUNCTION". Client agrees to be solely responsible for making such determination(s), and Client agrees to indemnify AEROTEK and hold AEROTEK harmless for any claims, costs or damages which may result from the Client's breach of its obligations contained herein.

**15.10. HEALTH AND SAFETY:** Client shall provide a safe, clean work environment that complies with all applicable local, state and federal laws. Client agrees to train, certify, evaluate and orient all Contract Employees in all applicable safety (IIPP), hazardous communication (SDS information, etc.) ergonomic and operational instructions in the same manner as Client employees and as required by policy or by law, including but not limited to, all federal OSHA and equivalent state agency requirements, guidelines and standards. Client agrees to document Contract Employee site specific training, which documents the date and type of training conducted. The Client further agrees to promptly provide verification of site specific training upon AEROTEK's request. Further, Client agrees to notify AEROTEK if any health and safety medical testing or medical surveillance will be required for Contract Employees. Client agrees to notify AEROTEK of any changes in occupational exposures that would require medical testing or medical surveillance. To the extent a Contract Employee is obligated to meet site-specific training requirements in order for Client to comply with applicable site-specific legal requirements, the Client shall provide the Contract Employee with all necessary training before placing the Contract Employee into the work environment and before allowing the Contract Employee to commence the specific assignment. AEROTEK shall provide and require all AEROTEK Contract Employees to wear all appropriate safety equipment. Client will notify AEROTEK immediately in the event of an accident or medical treatment of any Contract Employee, and will provide a completed supervisor's report of injury. AEROTEK may perform, if feasible, an inspection of the workplace to conduct its own hazard assessment or to ensure implementation of the Client's safety and health obligations. Client agrees to provide the necessary and accurate information to complete this assessment. In the event of an accident or other incident involving a Contract Employee, AEROTEK shall have the right to conduct an onsite investigation. Client shall cooperate with AEROTEK in the conduct of its investigation. Client will be responsible for all OSHA recordkeeping responsibilities required by law in the performance and execution of the terms of this agreement. Client shall indemnify AEROTEK and hold it harmless against and from any claims made or brought as a result of Client's breach of its obligations contained in this paragraph.

**15.11. PROCESSING AND PROTECTION OF PERSONAL DATA:** Client anticipates that all Client personal data that AEROTEK's Contract Employee(s) will process as part of the work belongs to residents of the United States, and Client will notify AEROTEK if this changes so the parties can determine if an amendment to this data processing and protection section is necessary. AEROTEK's Contract Employee(s) shall comply with applicable data protection law(s) and at all times process the Client personal data only for the purpose of providing the work to Client under this Agreement and for no other purposes. Further, AEROTEK's Contract Employees are prohibited from: (i) selling the Client personal data or (ii) retaining, using or disclosing the Client personal data for any purpose other than performing the services. Under the CCPA, AEROTEK will act as a Service Provider with Client acting as a Business. Each party shall, taking into account the nature of the processing, reasonably cooperate with the other party to enable the other party to respond to requests, complaints and the exercise of data subject rights or other communications from data subjects or regulatory bodies related to the processing of Client personal data under this Agreement. As part of the services, AEROTEK, acting as a Business under the CCPA, will share with Client, acting as a Business under the CCPA, certain personal data about the Contract Employee(s). The personal data will include, for example and without limitation, name, contact information, CV/resume information and other personal data necessary for AEROTEK to provide the services to Client (collectively the "AEROTEK Personal Data"). Client agrees that it shall process such AEROTEK Personal Data in compliance with applicable data protection laws, and at all times only for purposes related to receiving the services and is expressly prohibited from selling the AEROTEK Personal Data. AEROTEK is providing the AEROTEK Personal Data to Client at the request of the Contract Employee(s) and such disclosure is therefore not a "sale" of the AEROTEK Personal Data under CCPA.

**15.12. DATA SECURITY:** The parties agree that Client is responsible for all organizational and technical measures to ensure compliance with applicable data protection laws in the customer work environment where the Contract Employee(s) are providing the work, including without limitation being responsible for policies, codes of practices and/or procedures, providing appropriate training to AEROTEK's Contract Employee(s) on Client data protection policies and procedures as needed, providing appropriate technical controls to computer systems, networks and devices issued by Client that may be used by AEROTEK's Contract Employee(s) and providing appropriate physical controls in facilities controlled by Client. Client acknowledges and agrees that it determines what Client personal data AEROTEK will have access to as part of the services. In the event a security incident occurs involving a Contract Employee assigned to Client under this Agreement, Client agrees to report the security incident to AEROTEK via the following link: https://infosec.allegisgroup.com. For example, and without limitation, this includes reporting as a security incident that Client equipment is lost or stolen, or any sensitive, proprietary or Client confidential information contained on the equipment is improperly transmitted or disclosed.

**15.13 REMOTE WORK NOTIFICATION:** In the event Client requires Contract Employees to work remotely or work from any location other as stated in the Client's Purchase Order ("Remote Work Arrangement"), Client will provide AEROTEK with advanced written notification of such change and obtain prior written approval from AEROTEK. If Client fails to provide AEROTEK with prior notice



of the Remote Work Arrangement, AEROTEK may, in its sole and absolute discretion, deem this Agreement breached by the Client.

**15.14. OTHER REQUIREMENTS:** Client acknowledges and agrees that it shall be responsible for notifying AEROTEK of any other industry-specific law or regulation applicable to the services provided by AEROTEK prior to any AEROTEK employee providing any services.

**15.15. ANNUAL INFLATION ADJUSTMENT:** Within the first sixty (60) days of every calendar year, AEROTEK reserves the right to request an adjustment of established bill rates per purchase order with Client by up to 3% to cover specific direct cost increases. This bill rate adjustment will include any statutory, employee benefit, or Contract Employee compensation increases. AEROTEK will submit a revised _Exhibit A_ reflecting the bill rate adjustment at the effective date of change to the Client for documentation purposes. Any rate adjustment will be applicable on a go forward basis only.

**15.16. GOVERNING LAW:** The laws of the State of Ohio shall govern the validity and construction of this Agreement and any dispute arising out of or relating to this Agreement, without regard to the principles of conflict of laws.

**15.17. SEVERABILITY:** A ruling by any court that one or more of the provisions contained in this Agreement is invalid, illegal or unenforceable in any respect shall not affect any other provision of this Agreement so long as the economic or legal substance of the transactions contemplated hereby is not affected in any manner materially adverse to any party. Thereafter, this Agreement shall be construed as if the invalid, illegal, or unenforceable provision had been amended as originally contemplated by this Agreement to the greatest extent possible.

**15.18. COUNTERPARTS:** This Agreement may be executed simultaneously in two or more counterparts, each of which shall be deemed an original. In that event, in providing this Agreement it shall not be necessary to produce or account for the counterpart signed by the party against whom the proof is being presented.

**15.19. HEADINGS:** The section and subsection headings have been included for convenience only, are not part of this Agreement and shall not be taken as an interpretation of any provision of this Agreement.

**15.20. BINDING EFFECT:** This Agreement shall be binding upon and shall inure to the benefit of the parties and their respective heirs, legatees, personal representatives and other legal representatives, successors and permitted assigns. Except as otherwise specifically provided, this Agreement is not intended and shall not be construed to confer upon or to give any person other than the parties any rights or remedies.

**15.21. AMENDMENTS AND MODIFICATIONS:** Except for modifications to _Exhibit A_ pursuant to Section 2 herein, this Agreement may be amended, waived, changed, modified or discharged only by an agreement in writing signed by all of the parties.

**15.22. ENTIRE AGREEMENT:** This Agreement and _Exhibits_ attached hereto constitutes the entire agreement between the parties, and there are no representations, warranties, covenants or obligations except as set forth in this Agreement. This Agreement supersedes all prior and contemporaneous agreements, understandings, negotiations and discussions, written or oral, of the parties, relating to any transaction contemplated by this Agreement.

16. Audit Rights. Aerotek shall keep accurate, complete, and current books and records of account relative to all Contract Employees assigned to Client. To the extent permitted by law, Client shall have the right to audit the records of Aerotek relative to the identification, screening, qualification, assignment, Ohio FTE requirements and payment of temporary employees and also as to amounts claimed by the Aerotek to be due and owing to it on account of Contract Employees assigned. In case of any discrepancy in amounts owed to the Aerotek for personnel assigned, hours worked, or other matters arising under or incidental to this Agreement, Client shall have the right to offset any amounts payable to the Aerotek on account of such discrepancies or errors.

**AEROTEK, INC.**

By: _Brandon Eldridge_

Name: Brandon Eldridge

Title: Contracts Manager

Date: July 7, 2022

**Client: Fosler Construction Company, Inc**

By: _____

Name: James H. Jackson

Title:    Chief Operating Officer

Date:        7-7-2022

**EXHIBIT A**

Pursuant to the terms and conditions of the Services Agreement ("Agreement") dated July 7th, 2022 by and between AEROTEK, Inc. ("AEROTEK") and Fosler Construction Company, Inc ("Client"), Client agrees to reimburse AEROTEK in full at the following approved rates:

**Contract Employee Information**

| | | | | |
|---|---|---|---|---|
| Division | Industrial | | | |
| Client Job Title/Contractor Name | | | | |
| Aerotek Job Title | | | | |
| Temp to Hire Duration (Section 11.1) | | | | |
| Guarantee Period (Section 12.2) | | | | |

**Standard Billing Rates**

| | | | | |
|---|---|---|---|---|
| Straight Time Billing Rate | | | | |
| Overtime Billing Rate | | | | |
| Double Time Billing Rate | | | | |

**Additional Billing Rates**

| | | | | |
|---|---|---|---|---|
| Select Billable Option(s) | | | | |
| | | | | |
| | | | | |
| | | | | |

*Excluding applicable sales or other tax

**AGREED AND ACCEPTED:**

**Client :** Fosler Construction Company, Inc                **AEROTEK, INC.**

By: _____                By: _____
       (Signature)                                 (Signature)

_____                _____
       (Name/Title)                                 (Name/Title)

_____                _____
       (Date)                                       (Date)